CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS   2017 NOV 21   PM 2: 15
DALLAS DIVISION

DEPUTY CLERK_____CAA

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:16-CR-056-L |
| v. | (Supersedes indictments filed February 18, 2016 and January 24, 2017) |
| ROGER ZAMORA (03) | |
|   a.k.a. JAIME ALBA JUAREZ | **TO BE FILED UNDER SEAL** |
| CAMILA ANDREA ESPITIA (04) | |
| MOHAMMED NATOUR (05) | |
| FABRIZIA CAVANNA SARMIENTO (07) | |
|   a.k.a. FABRIZIA CAVANNA | |
| ANDRES FELIPE HENAO (08) | |
| BRAYAN DAVID VARGAS LONDOÑO (09) | |
|   a.k.a. BRAYAN VARGAS | |
|   a.k.a. BRAYAN DAVID VARGAS | |
|     GONZALEZ | |
| RODOLFO VARGAS LONDOÑO (10) | |
|   a.k.a. CHRISTIAN VARGAS | |
|   a.k.a. MARIO STEVEN CUELLAR | |
|   a.k.a. JOSHUA STEVEN CAVAREZ | |
|   a.k.a. BLANCO ELIZANORO RECIO- | |
|     ACHACH | |
| LUIS GARCIA (11) | |

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

### Count One
Racketeer Influenced and Corrupt Organizations (RICO) Conspiracy
(Violation of 18 U.S.C. § 1962(d))

### The Enterprise

1.    At all times relevant to this Indictment, **Roger Zamora [a.k.a. Jaime Alba Juarez] (hereafter "Zamora")**, **Mohammed Natour (hereafter "Natour")**, and **Fabrizia Cavanna Sarmiento [a.k.a. Fabrizia Cavanna] (hereafter "Cavanna")**, the

defendants, and others known and unknown to the Grand Jury, were members and associates of a criminal organization, which was engaged in, among other things, acts of violence, robbery of traveling diamond and jewelry salesmen, money laundering, and transport and sale of stolen goods, and which operated principally from the Dallas, Texas, Houston, Texas, and Miami, Florida areas.

2.      This criminal organization, including its leadership, membership, and associates, constituted an "enterprise," as defined by 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

<u>Purposes of the Enterprise</u>

3.      The purposes of the enterprise included promoting and enhancing the enterprise, and enriching its members and associates through, among other things, robbery of traveling diamond and jewelry salesmen.

<u>Manner and Means of the Enterprise</u>

4.      Among the manner and means by which the members and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.      Members of the enterprise and their associates robbed traveling diamond and jewelry salesmen of diamonds, jewels, jewelry, cash, and other goods, including, but not limited to, the robberies listed in the Overt Acts.

b.      Members of the enterprise and their associates conducted surveillance on diamond and jewelry stores and traveling diamond and jewelry salesmen in order to identify prospective robbery victims, using teams of individuals to watch the stores from their vehicles and on foot, including, but not limited to, the surveillance operations listed in the Overt Acts.

c.      Members of the enterprise and their associates identified traveling diamond and jewelry salesmen and organized plans to follow and rob them of diamonds, jewels, jewelry, cash, and other goods.  Members of the enterprise often used cellular telephones to communicate with one another.

d.      Members of the enterprise and their associates wore long-sleeved clothing, long pants, gloves, and items covering their faces to conceal their identity and limit the trace evidence left behind during the robberies.

e.      Members of the enterprise and their associates blocked-in the vehicles of traveling diamond and jewelry salesmen and often disabled the vehicles by, among other means, flattening the vehicles' tires and breaking the vehicles' windows.

f.      Members of the enterprise and their associates used violence, threats of violence, and weapons, including BB guns, knives, blades, and center punches, to rob the traveling diamond and jewelry salesmen.

g.      Members of the enterprise and their associates often stole the traveling diamond and jewelry salesmen' telephones and keys to their vehicles, and quickly fled the scene of the robberies.

h.      Members of the enterprise and their associates traveled and transported the stolen diamonds, jewels, jewelry, cash, and other goods across state lines and made telephone calls in interstate commerce to further the goals of the enterprise.

i.      Members of the enterprise and their associates sold the stolen diamonds, jewels, jewelry, and other goods to individuals who buy and sell stolen goods ("fences") in Miami, Florida, and elsewhere, and then split the proceeds of their unlawful activities.

j.      Members of the enterprise and their associates laundered the proceeds of their unlawful activities by, among other means, using proceeds from their robberies to purchase, lease, finance, and transfer, cellular telephones, vehicles, rental vehicles, residences, and rental properties in furtherance of their unlawful activities; and paying for travel expenses, such as hotel rooms, meals, and gas, during the course of their surveillance and robbery of traveling diamond and jewelry salesmen and transport of stolen diamonds, jewels, jewelry, cash, and other goods.

k.      Members of the enterprise and their associates obtained rental vehicles, airline tickets, hotel rooms, and other short-term housing, and opened bank accounts and obtained bank cards and credit cards using fraudulent identification documents to facilitate the robberies and surveillance operations.

l.      Members of the enterprise and their associates changed vehicles and license plates on their vehicles to avoid detection during the course of the robberies and surveillance operations.

## The Racketeering Conspiracy

5.      Beginning on or about September 26, 2014, and continuing through on or about January 27, 2016, both dates being approximate and inclusive, within the Northern District of Texas, and elsewhere, **Zamora**, **Natour**, and **Cavanna**, the defendants, together with each other and other persons known and unknown to the Grand Jury, being persons employed by and associated with the enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity consisting of multiple acts indictable under:

   a.      18 U.S.C. § 1951 (interference with commerce by robbery);

   b.      18 U.S.C. § 1956 (laundering of monetary instruments);

   c.      18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity);

   d.      18 U.S.C. § 2314 (transportation of stolen goods or other property);

   e.      18 U.S.C. § 2315 (sale or receipt of stolen goods or other property);

   f.      18 U.S.C. § 1344 (bank fraud);

   g.      18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information); and

   h.      18 U.S.C. § 1543 (forgery or false use of passport);

and multiple acts involving:

   i.      Robbery, chargeable under Texas Penal Code, §§ 7.02, 15.01, 15.02, 15.03, 29.01, 29.02, and 29.03; Indiana Code, §§ 35-42-5-1, 35-41-5-1, 35-41-5-2, and 35-41-2-4; Oklahoma Statutes, §§ 21-421, 21-42, 21-172, 21-44, 21-

791 through 21-795, and 21-797 through 21-801; Va. Code §§ 18.2-58, 18.2-18, 18.2-22 and 18.2-26, and the common law of Virginia; and Florida Statutes, § 777.011, 777.04, and 812.13.

6.      It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

Overt Acts

7.      In furtherance of the conspiracy, and to affect the object and purposes thereof, **Zamora**, **Natour**, and **Cavanna**, the defendants, and others known and unknown to the Grand Jury, committed various overt acts, including but not limited to the following:

8.      Beginning on or about September 26, 2014, and continuing through on or about January 27, 2016, members of the enterprise, including **Zamora**, **Natour**, and others known to the Grand Jury, obtained fraudulent identification documents and used such fraudulent identification documents, including fraudulent passports and fraudulent driver's licenses, in furtherance of the enterprise, including airline travel, car rentals, apartment rentals, hotel rentals, opening bank and credit card accounts, any single act of which constitutes an overt act.

Robbery – On or about September 26, 2014 in The Villages, Oklahoma

9.      On or about September 23-25, 2014, **Natour**, using a fraudulent identification document, rented an apartment in Oklahoma City, Oklahoma, to facilitate a robbery that other known co-conspirators committed on or about September 26, 2014.

10.     On or about September 23-26, 2014, Co-conspirator #1, **Natour**, Co-conspirator #9, and Co-conspirator #10 conducted surveillance in the Oklahoma City, Oklahoma area, including the vicinity of a jewelry store (Huntington Fine Jewelers) located at 10633 South Western Avenue, Oklahoma City, Oklahoma, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

11.     On or about September 23-26, 2014, Co-conspirator #1, Co-conspirator #9, and Co-conspirator #10 utilized two rental vehicles, both secured by Co-conspirator #10 using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

12.     On or about September 26, 2014, Co-conspirator #1, Co-conspirator #9, and Co-conspirator #10 observed S.B., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry store and followed him to a jewelry store (Naifeh Fine Jewelry) located at 9203 North Pennsylvania Avenue, Oklahoma City, Oklahoma, with the specific intent to rob him.

13.     On or about September 26, 2014, Co-conspirator #1 and Co-conspirator #10 disguised their identities prior to approaching S.B., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

14.     On or about September 26, 2014, Co-conspirator #1 and Co-conspirator #10 approached S.B. outside the jewelry store, while Co-conspirator #9 continued

surveillance.  Co-conspirator #1 and Co-conspirator #10, acting together, flattened the tire of S.B.'s vehicle and took personal property, consisting of diamonds and jewelry, from the person and in the presence of S.B., in his capacity as a traveling diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a knife.

15.    Following the September 26, 2014 robbery in Oklahoma City, Oklahoma, Co-conspirator #1, Co-conspirator #9, and Co-conspirator #10 sold the above-referenced stolen diamonds and jewelry to a buyer, who traveled from Florida to Oklahoma to purchase the stolen property.

<u>Robbery – On or about January 30, 2015 in Dallas, Texas</u>

16.    On or about January 29-30, 2015, Co-conspirator #1, **Natour**, Co-conspirator #8, and Co-conspirator #14 conducted surveillance in the Coppell, Texas area, including the vicinity of a jewelry store (Diamond Jewelry Co.) located at 820 South MacArthur Boulevard, Coppell, Texas, the Sherman, Texas area, including the vicinity of a jewelry store (The Jeweler's Bench) located at 2916 U.S. Highway 75, Sherman, Texas, and the Dallas, Texas area, including the vicinity of a hotel (The Westin) located at 13340 Dallas Parkway, Dallas, Texas, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

17.    On or about January 29-30, 2015, Co-conspirator #1, **Natour**, Co-conspirator #8, and Co-conspirator #14 utilized two rental vehicles, both secured by **Natour** using a fraudulent identification document, in order to conduct the above-

referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

18.     On or about January 29, 2015, Co-conspirator #1, **Natour**, Co-conspirator #8, and Co-conspirator #14 observed H.B., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry stores and followed him to the above-referenced hotel (The Westin) located 13340 Dallas Parkway, Dallas, Texas, with the specific intent to rob him.

19.     On or about January 30, 2015, Co-conspirator #1, Co-conspirator #8, and Co-conspirator #14 disguised their identities prior to approaching H.B., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

20.     On or about January 30, 2015, Co-conspirator #1, Co-conspirator #8, and Co-conspirator #14 approached H.B. outside the above-referenced hotel, while **Natour** continued surveillance. Co-conspirator #1 and Co-conspirator #8, acting together, flattened the tire of H.B.'s vehicle and took personal property, consisting of diamonds, from the person and in the presence of H.B., in his capacity as a traveling diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a knife.

21.     Following the January 30, 2015 robbery in Dallas, Texas, Co-conspirator #1 sold the above-referenced stolen diamonds to a buyer, who traveled from Colombia to the Dallas, Texas area to purchase the stolen property.

Robbery – On or about March 31, 2015 in Miami Beach, Florida

22.     On or about March 30, 2015, Co-conspirator #1, **Natour**, Co-conspirator #8, Co-conspirator #14, and a person unknown to the Grand Jury, conducted surveillance in the Miami, Florida area, including the vicinity of a building (Seybold Jewelry Building) containing diamond and jewelry stores located at 36 NE First Street, Miami, Florida, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

23.     On or about March 30, 2015, Co-conspirator #1, **Natour**, Co-conspirator #8, Co-conspirator #14, and a person unknown to the Grand Jury utilized two rental vehicles, both secured by Co-conspirator #1 using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

24.     On or about March 30, 2015, Co-conspirator #1, **Natour**, Co-conspirator #8, Co-conspirator #14, and a person unknown to the Grand Jury observed I.M., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced building containing diamond and jewelry stores and followed him to a hotel (Deauville Beach Resort) located at 6701 Collins Avenue, Miami Beach, Florida, with the specific intent to rob him.

25.     On or about March 31, 2015, Co-conspirator #1, Co-conspirator #8, Co-conspirator #14, and a person unknown to the Grand Jury disguised their identities prior to approaching I.M., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order

to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

26.     On or about March 31, 2015, Co-conspirator #1, Co-conspirator #8, Co-conspirator #14, and a person unknown to the Grand Jury approached I.M. inside a parking garage located at 6225 67th Street, Miami Beach, Florida, while **Natour** continued surveillance.  Co-conspirator #1, Co-conspirator #8, and a person unknown to the Grand Jury, acting together, attempted to take personal property, consisting of a bag containing jewelry, from the person and in the presence of I.M., in his capacity as a traveling diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a knife.

Robbery – On or about September 3, 2015 in Dallas, Texas

27.     On or about August 23, 2015, Co-conspirator #1, using a fraudulent identification document, rented an apartment in Irving, Texas, to facilitate a robbery that Co-conspirator #1, Co-conspirator #2, **Natour**, and Co-conspirator #15 committed on or about September 3, 2015.

28.     On or about September 1-3, 2015, Co-conspirator #1, Co-conspirator #2, **Natour**, and Co-conspirator #15 conducted surveillance in the Dallas, Texas area, including the vicinities of jewelry stores and office buildings containing diamond and jewelry businesses (including Dr. Gold Jewelry & Diamonds) located at 4151 Beltline Road, Addison, Texas, an office building containing diamond and jewelry businesses located at 5757 Alpha Road, Dallas, Texas, a jewelry store (Skibell Fine Jewelry) located

at 8411 Preston Road, Dallas, Texas, and the Dallas World Trade Center (DWTC)

located at 2050 North Stemmons Freeway, Dallas, Texas, for the purpose of identifying

and robbing a traveling diamond and jewelry salesman.

29.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2, and

**Natour** utilized two rental vehicles, one secured by Co-conspirator #1 using a fraudulent

identification document and the other secured by **Natour** using a fraudulent identification

document, in order to conduct the above-referenced surveillance, facilitate the

commission of the robbery, and avoid detection and apprehension by law enforcement.

30.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2,

**Natour**, and Co-conspirator #15 observed R.S., an individual who they believed to be a

traveling diamond and jewelry salesman, at several of the above-referenced locations and

followed him to an office building containing diamond and jewelry businesses located at

12900 Preston Road, Dallas, Texas, with the specific intent to rob him.

31.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2, and

Co-conspirator #15 disguised their identities prior to approaching R.S., by wearing long-

sleeved clothing, long pants, gloves, and items covering their faces, and altered the

display of the license plate on their vehicle in order to facilitate the commission of the

robbery and avoid detection and apprehension by law enforcement.

32.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2, and

Co-conspirator #15 approached R.S. outside the above-referenced location, while **Natour**

continued surveillance.  Co-conspirator #1, Co-conspirator #2, and Co-conspirator #15,

acting together, flattened the tire and broke the window of R.S.'s vehicle and took

personal property, consisting of diamonds and a Rolex watch, from the person and in the

presence of R.S., in his capacity as a diamond and jewelry salesman, and against his will

by means of actual and threatened force, violence, and fear of immediate injury to his

person, that is, by using and brandishing a BB gun.

33.     Following the September 3, 2015 robbery, in Dallas, Texas, Co-conspirator

#1, **Natour**, and Co-conspirator #15 traveled to the Los Angeles, California area and sold

the above-referenced stolen diamonds to a buyer.

<u>Robbery – On or about October 26, 2015 in Houston, Texas</u>

34.     On or about October 25-26, 2015, Co-conspirator #1, Co-conspirator #2,

**Zamora**, Co-conspirator #6, **Cavanna**, Co-conspirator #11, and Co-conspirator #12

conducted surveillance in the Houston, Texas area, including the vicinities of an office

building containing diamond and jewelry businesses located at 6222 Richmond Avenue,

Houston, Texas, and several jewelry stores, including a pawn/jewelry store (Wright Pawn

& Jewelry) located at 6218 Westheimer Road, Houston, Texas, for the purpose of

identifying and robbing a traveling diamond and jewelry salesman.

35.     On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2,

**Zamora**, Co-conspirator #6, **Cavanna**, Co-conspirator #11, and Co-conspirator #12

utilized three rental vehicles, one secured by Co-conspirator #1 using a fraudulent

identification document, one secured by Co-conspirator #2 using a fraudulent

identification document, and one secured by Co-conspirator #11, in order to conduct the

above-referenced surveillance, facilitate the commission of the robbery, and avoid

detection and apprehension by law enforcement.

36.     On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna**, observed J.D., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced diamond and jewelry stores and followed him to a pawn store (A&P Pawn) located at 7917 Westheimer Road, Houston, Texas, with the specific intent to rob him.

37.     On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 disguised their identities prior to approaching J.D., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

38.     On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 approached J.D. outside the above-referenced pawn store, while **Cavanna** continued surveillance. Co-conspirator #2, **Zamora**, and Co-conspirator #6 then took personal property, consisting of diamonds, from the person and in the presence of J.D., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

39.     Following the October 26, 2015 robbery in Houston, Texas, **Cavanna** sent the stolen diamonds to Co-conspirator #4 via FedEx from Houston, Texas to Miami, Florida. Co-conspirator #1 and **Cavanna** subsequently sold the stolen diamonds to a buyer in Miami, Florida.

<u>Robbery – On or about November 10, 2015 in Hollywood, Florida</u>

40.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2,

**Zamora**, Co-conspirator #4, Co-conspirator #6, and **Cavanna** conducted surveillance in

the Aventura, Florida area, including the vicinity of jewelry stores (International Jewelers

Exchange) located at 19275 Biscayne Boulevard, Aventura, Florida, and the Boca Raton,

Florida area, including the vicinity of jewelry stores (International Jewelers Exchange)

located at 8221 Glades Road, Boca Raton, Florida, for the purpose of identifying and

robbing a traveling diamond and jewelry salesman.

41.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2,

**Zamora**, Co-conspirator #4, Co-conspirator #6, and **Cavanna** utilized two rental

vehicles, one secured by Co-conspirator #1 using a fraudulent identification document

and the other secured by Co-conspirator #6, in order to conduct the above-referenced

surveillance, facilitate the commission of the robbery, and avoid detection and

apprehension by law enforcement.

42.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2,

**Zamora**, Co-conspirator #4, Co-conspirator #6, and **Cavanna** observed E.I., an

individual who they believed to be a traveling diamond and jewelry salesman, at the

above-referenced jewelry stores and followed him to a business located at 4401 Sheridan

Street, Hollywood, Florida, with the specific intent to rob him.

43.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2,

**Zamora**, and Co-conspirator #6 disguised their identities prior to approaching E.I., by

wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and

altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

44.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 approached E.I. outside of the above-referenced business, while Co-conspirator #4 and **Cavanna** continued surveillance.  Co-conspirator #2, **Zamora**, and Co-conspirator #6, acting together, flattened the tire of E.I.'s vehicle and took personal property, consisting of jewelry, from the person and in the presence of E.I., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person.

45.     Following the November 10, 2015 robbery in Hollywood, Florida, Co-conspirator #1 and **Cavanna** negotiated the sale of the stolen jewelry to a buyer in Miami, Florida.  Co-conspirator #2 and Co-conspirator #4 subsequently picked up the proceeds from the buyer in Miami, Florida.

<u>Robbery – On or about November 15, 2015 in Indianapolis, Indiana</u>

46.     On or about November 13-14, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** traveled from Florida to the Indianapolis, Indiana area to target a jewelry store (Distinctive Diamonds) located in the vicinity of 8557 River Road, Indianapolis, Indiana, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

47.     On or about November 13-15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** utilized three rental vehicles, one secured by Co-conspirator #2 in Miami, Florida using a fraudulent identification document and two

secured by **Zamora** using a fraudulent identification document for each transaction, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

48.     On or about November 15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** observed L.D.B., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry store and followed him to a hotel (Marriott TownePlace Suites) located at 8468 Union Chapel Road, Indianapolis, Indiana, with the specific intent to rob him.

49.     On or about November 15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 disguised their identities prior to approaching L.D.B., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

50.     On or about November 15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 approached L.D.B. outside the above-referenced hotel, while **Cavanna** continued surveillance.  Co-conspirator #2, **Zamora**, and Co-conspirator #6, acting together, flattened the tire and broke the window of L.D.B.'s vehicle and took personal property, consisting of a bag containing documents and empty jewelry trays, from the person and in the presence of L.D.B., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

51.     Following the November 15, 2015 robbery in Indianapolis, Indiana, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** traveled back to Florida.

<u>Robbery – On or about December 6, 2015 in Vienna, Virginia</u>

52.     On or about December 3-4, 2015, Co-conspirator #1, Co-conspirator #2, and **Zamora** traveled from Florida to the Tysons, Virginia area to target a jewelry store (Mervis Diamond Importers) located in the vicinity of 1900 Mervis Way, Tysons, Virginia, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.  On or about December 5, 2015, Co-conspirator #13 traveled from Seattle, Washington to the Tysons, Virginia area, using an airline ticket purchased by Co-conspirator #1 and **Zamora**, for the same purpose.

53.     On or about December 4-6, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #13 utilized three rental vehicles, one secured by Co-conspirator #1 using a fraudulent identification document, one secured by Co-conspirator #2 using a fraudulent identification document, and one secured by **Zamora** using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

54.     On or about December 6, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #13 observed B.H., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry store and

followed him to a location near the intersection of Gallows Branch Road and Old

Gallows Road in Vienna, Virginia, with the specific intent to rob him.

55.     On or about December 6, 2015, Co-conspirator #1, Co-conspirator #2, and

**Zamora** disguised their identities prior to approaching B.H., by wearing long-sleeved

clothing, long pants, gloves, and items covering their faces, and altered the display of the

license plate on their vehicle in order to facilitate the commission of the robbery and

avoid detection and apprehension by law enforcement.

56.     On or about December 6, 2015, Co-conspirator #1, Co-conspirator #2, and

**Zamora** maneuvered their vehicle in a manner to impede B.H.'s direction of travel, while

Co-conspirator #13 attempted the same.  Co-conspirator #2 and **Zamora** exited their

vehicle, while Co-conspirator #1 continued surveillance, and approached B.H. and

attempted to take his personal property, which they believed included diamonds and

jewelry, from the person and in the presence of B.H., in his capacity as a diamond and

jewelry salesman, and against his will by means of actual and threatened force, violence,

and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

B.H. successfully avoided the robbery by driving away in his vehicle.

57.     Following the December 6, 2015 attempted robbery in Vienna, Virginia,

Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #13 traveled to

Florida.  Co-conspirator #13 subsequently traveled back to the state of Washington.

<u>Robbery – On or about January 21, 2016 in Farmers Branch, Texas</u>

58.     On or about January 19, 2016, Co-conspirator #1 and **Zamora**, using a

fraudulent identification document, rented an apartment in Addison, Texas, to facilitate a

robbery that Co-conspirator #1, Co-conspirator #2, and **Zamora** committed on or about January 21, 2015.

59.     On or about January 19, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** traveled from Houston, Texas to the Dallas, Texas area to conduct surveillance, including the area of two office buildings containing diamond and jewelry businesses located at 5550 and 5580 LBJ Freeway, Dallas, Texas, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

60.     On or about January 21, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** utilized two rental vehicles, one secured by Co-conspirator #1 using a fraudulent identification document and one secured by Co-conspirator #2 using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

61.     On or about January 21, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** observed E.A., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced office buildings containing diamond and jewelry businesses and followed him to several locations, including a parking lot located in the vicinity of 4255 LBJ Freeway, Farmers Branch, Texas, with the specific intent to rob him.

62.     On or about January 21, 2016, Co-conspirator #1 and Co-conspirator #2 disguised their identities prior to approaching E.A., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license

plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

63.     On or about January 21, 2016, Co-conspirator #1 and Co-conspirator #2 approached E.A. in the parking lot at the above-referenced location, while **Zamora** continued surveillance.  Co-conspirator #2 then took personal property, consisting of E.A.'s rental vehicle, which they believed contained diamonds and jewelry, from the person and in the presence of E.A., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

<u>Robbery – On or about January 27, 2016 in Dallas, Texas</u>

64.     On or about January 19, 2016, Co-conspirator #1 and **Zamora**, using a fraudulent identification document, rented an apartment in Addison, Texas, to facilitate a robbery that Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #4 committed on or about January 27, 2015.

65.     On or about January 19, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** traveled from Houston, Texas to the Dallas, Texas area to conduct surveillance of diamond and jewelry businesses, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

66.     On or about January 25-27, 2016, Co-conspirator #1, Co-conspirator #2, **Zamora,** and Co-conspirator #4 conducted surveillance in the Dallas, Texas area, including diamond and jewelry businesses located at 5550 and 5580 L.B.J. Freeway, Dallas, Texas, and a jewelry store (Diamond Doctor) located at 8127 Preston Road,

Dallas, Texas, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

67.     On or about January 25-27, 2016, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #4 utilized two rental vehicles, both secured by **Zamora** using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

68.     On or about January 27, 2016, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #4 observed an FBI undercover employee, who had secretly assumed the role of a traveling diamond and jewelry salesman, inside the above-referenced jewelry store located at 8127 Preston Road, Dallas, Texas, and followed him/her to a hotel parking lot in the vicinity of 14021 Noel Road, Dallas, Texas, believing the FBI undercover employee was a traveling diamond and jewelry salesman.

69.     On or about January 27, 2016, Co-conspirator #1 and Co-conspirator #2 disguised their identities prior to approaching the FBI undercover employee, by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

70.     On or about January 27, 2016, Co-conspirator #1 and Co-conspirator #2 approached the FBI undercover employee in the parking lot at the above-referenced location, while **Zamora** and Co-conspirator #4 continued surveillance.  Co-conspirator #1 and Co-conspirator #2, acting together, broke the window of the FBI undercover

employee's vehicle and took personal property, consisting of two bags, which they believed contained diamonds and jewelry, from the person and in the presence of the FBI undercover employee, in his assumed role as a traveling diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

In violation of 18 U.S.C. § 1962(d), the penalty for which is found at 18 U.S.C. § 1963(a).

Count Two
Conspiracy to Interfere with Commerce by Robbery
(Violation of 18 U.S.C. § 1951(a))

Beginning on or about September 26, 2014, and continuing through on or about January 27, 2016, in the Northern District of Texas (NDTX), and elsewhere, **Roger Zamora [a.k.a. Jaime Alba Juarez] (hereafter "Zamora"), Camila Andrea Espitia (hereafter "Espitia"), Mohammed Natour (hereafter "Natour"), Fabrizia Cavanna Sarmiento [a.k.a. Fabrizia Cavanna] (hereafter "Cavanna"), Andres Felipe Henao (hereafter "Henao"), Brayan David Vargas Londoño [a.k.a. Brayan Vargas, a.k.a. Brayan David Vargas Gonzalez] (hereafter "Brayan Londoño"), Rodolfo Vargas Londoño [a.k.a. Christian Vargas, a.k.a. Mario Steven Cuellar, a.k.a. Joshua Steven Cavarez, a.k.a. Blanco Elizanoro Recio-Achach] (hereafter "Rodolfo Londoño"), and Luis Garcia (hereafter "Garcia")**, the defendants, and others known and unknown to the Grand Jury, did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together and with each other, to commit certain offenses against the United States, to-wit: interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a).

Object of the Conspiracy

The object of the conspiracy was to unlawfully take and obtain personal property, consisting of diamonds and jewelry, from the persons and in the presence of the individuals referenced below in Count Two of this indictment, believed to be acting in their capacities as diamond and jewelry salesmen, and against their will by means of actual and threatened force, violence, and fear of immediate injury to their persons.

Manner and Means

1.    It was part of the conspiracy that **Zamora**, **Espitia**, **Natour**, **Cavanna**, **Henao**, **Brayan Londoño**, **Rodolfo Londoño**, and **Garcia**, the defendants, and others known and unknown to the Grand Jury, discussed and planned with each other, among other things, one or more of the following robberies:

| Date (on or about) | Robbery Victim | Robbery Location |
|---|---|---|
| September 26, 2014 | S.B. | 9203 North Pennsylvania Avenue, Oklahoma City, Oklahoma |
| January 30, 2015 | H.B. | 13340 Dallas Parkway, Dallas, Texas |
| March 31, 2015 | I.M. | 6225 67th Street, Miami Beach, Florida |
| September 3, 2015 | R.S. | 12900 Preston Road, Dallas, Texas |
| October 26, 2015 | J.D. | 7917 Westheimer Road, Houston, Texas |
| November 10, 2015 | E.I. | 4401 Sheridan Street, Hollywood, Florida |
| November 15, 2015 | L.D.B. | 8468 Union Chapel Road, Indianapolis, Indiana |
| December 6, 2015 | B.H. | Gallows Branch Road/Old Gallows Road, Vienna, Virginia |
| January 21, 2016 | E.A. | 4255 LBJ Freeway, Farmers Branch, Texas |
| January 27, 2016 | FBI - UC | 14021 Noel Road, Dallas, Texas |

At all times during the course and scope of the conspiracy, the above-referenced individuals conducted business in interstate commerce, and the conspiracy would have, in any way or degree, obstructed, delayed, and affected commerce or the movement of any article or commodity in commerce, as contemplated in 18 U.S.C. § 1951.

2.    It was further part of the conspiracy that **Zamora**, **Espitia**, **Natour**, **Cavanna**, **Henao**, **Brayan Londoño**, **Rodolfo Londoño**, and **Garcia**, the defendants, and others known and unknown to the Grand Jury, formulated a plan and agreement which, among other things, included:

a. the acquisition of diamonds and jewelry;

b.  the selection of the individuals to be robbed;

c.  the use of a weapon to threaten and intimidate the individuals;

d.  the means of transportation to commit the robberies;

e.  the role of each co-conspirator in the robberies; and

f.  plans to avoid detection and apprehension by law enforcement.

<u>Overt Acts in Furtherance of the Conspiracy</u>

To effect the object of the conspiracy, **Zamora**, **Espitia**, **Natour**, **Cavanna**, **Henao**, **Brayan Londoño**, **Rodolfo Londoño**, and **Garcia**, the defendants, and others known and unknown to the Grand Jury, committed overt acts within the NDTX, and elsewhere, including, but not limited to, the following:

<u>Robbery – On or about September 26, 2014 in The Villages, Oklahoma</u>

1.  On or about September 23-25, 2014, **Natour**, using a fraudulent identification document, rented an apartment in Oklahoma City, Oklahoma, to facilitate a robbery that other known co-conspirators committed on or about September 26, 2014.

2.  On or about September 23-26, 2014, Co-conspirator #1, **Natour**, **Brayan Londoño**, and **Rodolfo Londoño** conducted surveillance in the Oklahoma City, Oklahoma area, including the vicinity of a jewelry store (Huntington Fine Jewelers) located at 10633 South Western Avenue, Oklahoma City, Oklahoma, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

3.  On or about September 23-26, 2014, Co-conspirator #1, **Brayan Londoño**, and **Rodolfo Londoño** utilized two rental vehicles, both secured by **Rodolfo Londoño** using a fraudulent identification document, in order to conduct the above-referenced

surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

4.      On or about September 26, 2014, Co-conspirator #1, **Brayan Londoño**, and **Rodolfo Londoño** observed S.B., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry store and followed him to a jewelry store (Naifeh Fine Jewelry) located at 9203 North Pennsylvania Avenue, Oklahoma City, Oklahoma, with the specific intent to rob him.

5.      On or about September 26, 2014, Co-conspirator #1, **Brayan Londoño**, and **Rodolfo Londoño** observed S.B., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry store and followed him to a jewelry store (Naifeh Fine Jewelry) located at 9203 North Pennsylvania Avenue, Oklahoma City, Oklahoma, with the specific intent to rob him.

6.      On or about September 26, 2014, Co-conspirator #1 and **Rodolfo Londoño** disguised their identities prior to approaching S.B., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

7.      On or about September 26, 2014, Co-conspirator #1 and **Rodolfo Londoño** approached S.B. outside the jewelry store, while **Brayan Londoño** continued surveillance.  Co-conspirator #1 and **Rodolfo Londoño**, acting together, flattened the tire of S.B.'s vehicle and took personal property, consisting of diamonds and jewelry, from the person and in the presence of S.B., in his capacity as a traveling diamond and jewelry

salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a knife.

8.      Following the September 26, 2014 robbery in Oklahoma City, Oklahoma, Co-conspirator #1, **Brayan Londoño**, and **Rodolfo Londoño** sold the above-referenced stolen diamonds and jewelry to a buyer, who traveled from Florida to Oklahoma to purchase the stolen property.

<u>Robbery – On or about January 30, 2015 in Dallas, Texas</u>

9.      On or about January 29-30, 2015, Co-conspirator #1, **Natour**, **Henao**, and Co-conspirator #14 conducted surveillance in the Coppell, Texas area, including the vicinity of a jewelry store (Diamond Jewelry Co.) located at 820 South MacArthur Boulevard, Coppell, Texas, the Sherman, Texas area, including the vicinity of a jewelry store (The Jeweler's Bench) located at 2916 U.S. Highway 75, Sherman, Texas, and the Dallas, Texas area, including the vicinity of a hotel (The Westin) located at 13340 Dallas Parkway, Dallas, Texas, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

10.      On or about January 29-30, 2015, Co-conspirator #1, **Natour**, **Henao**, and Co-conspirator #14 utilized two rental vehicles, both secured by **Natour** using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

11.      On or about January 29, 2015, Co-conspirator #1, **Natour**, **Henao**, and Co-conspirator #14 observed H.B., an individual who they believed to be a traveling

diamond and jewelry salesman, at the above-referenced jewelry stores and followed him
to the above-referenced hotel (The Westin) located 13340 Dallas Parkway, Dallas, Texas,
with the specific intent to rob him.

12.     On or about January 30, 2015, Co-conspirator #1, **Henao**, and Co-
conspirator #14 disguised their identities prior to approaching H.B., by wearing long-
sleeved clothing, long pants, gloves, and items covering their faces, and altered the
display of the license plate on their vehicle in order to facilitate the commission of the
robbery and avoid detection and apprehension by law enforcement.

13.     On or about January 30, 2015, Co-conspirator #1, **Henao**, and Co-
conspirator #14 approached H.B. outside the above-referenced hotel, while **Natour**
continued surveillance.  Co-conspirator #1 and **Henao**, acting together, flattened the tire
of H.B.'s vehicle and took personal property, consisting of diamonds, from the person
and in the presence of H.B., in his capacity as a traveling diamond and jewelry salesman,
and against his will by means of actual and threatened force, violence, and fear of
immediate injury to his person, that is, by using and brandishing a knife.

14.     Following the January 30, 2015 robbery in Dallas, Texas, Co-conspirator
#1 sold the above-referenced stolen diamonds to a buyer, who traveled from Colombia to
the Dallas, Texas area to purchase the stolen property.

### Robbery – On or about March 31, 2015 in Miami Beach, Florida

15.     On or about March 30, 2015, Co-conspirator #1, **Natour**, **Henao**, Co-
conspirator #14, and a person unknown to the Grand Jury conducted surveillance in the
Miami, Florida area, including the vicinity of a building (Seybold Jewelry Building)

containing diamond and jewelry stores located at 36 NE First Street, Miami, Florida, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

16.     On or about March 30, 2015, Co-conspirator #1, **Natour**, **Henao**, Co-conspirator #14, and a person unknown to the Grand Jury, conducted surveillance in the Miami, Florida area, including the vicinity of a building (Seybold Jewelry Building) containing diamond and jewelry stores located at 36 NE First Street, Miami, Florida, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

17.     On or about March 30, 2015, Co-conspirator #1, **Natour**, **Henao**, Co-conspirator #14, and a person unknown to the Grand Jury utilized two rental vehicles, both secured by Co-conspirator #1 using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

18.     On or about March 30, 2015, Co-conspirator #1, **Natour**, **Henao**, Co-conspirator #14, and a person unknown to the Grand Jury observed I.M., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced building containing diamond and jewelry stores and followed him to a hotel (Deauville Beach Resort) located at 6701 Collins Avenue, Miami Beach, Florida, with the specific intent to rob him.

19.     On or about March 31, 2015, Co-conspirator #1, **Henao**, Co-conspirator #14, and a person unknown to the Grand Jury disguised their identities prior to approaching I.M., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order

to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

20.     On or about March 31, 2015, Co-conspirator #1, **Henao**, Co-conspirator #14, and a person unknown to the Grand Jury approached I.M. inside a parking garage located at 6225 67th Street, Miami Beach, Florida, while **Natour** continued surveillance. Co-conspirator #1, **Henao**, and a person unknown to the Grand Jury, acting together, attempted to take personal property, consisting of a bag containing jewelry, from the person and in the presence of I.M., in his capacity as a traveling diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a knife.

### Robbery – On or about September 3, 2015 in Dallas, Texas

21.     On or about August 23, 2015, Co-conspirator #1, using a fraudulent identification document, rented an apartment in Irving, Texas, to facilitate a robbery that Co-conspirator #1, Co-conspirator #2, **Natour**, and Co-conspirator #15 committed on or about September 3, 2015.

22.     On or about September 1-3, 2015, Co-conspirator #1, Co-conspirator #2, **Natour**, and Co-conspirator #15 conducted surveillance in the Dallas, Texas area, including the vicinities of jewelry stores and office buildings containing diamond and jewelry businesses (including Dr. Gold Jewelry & Diamonds) located at 4151 Beltline Road, Addison, Texas, an office building containing diamond and jewelry businesses located at 5757 Alpha Road, Dallas, Texas, a jewelry store (Skibell Fine Jewelry) located at 8411 Preston Road, Dallas, Texas, and the Dallas World Trade Center (DWTC)

located at 2050 North Stemmons Freeway, Dallas, Texas, for the purpose of identifying

and robbing a traveling diamond and jewelry salesman.

23.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2, and

**Natour** utilized two rental vehicles, one secured by Co-conspirator #1 using a fraudulent

identification document and the other secured by **Natour** using a fraudulent identification

document, in order to conduct the above-referenced surveillance, facilitate the

commission of the robbery, and avoid detection and apprehension by law enforcement.

24.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2,

**Natour**, and Co-conspirator #15 observed R.S., an individual who they believed to be a

traveling diamond and jewelry salesman, at several of the above-referenced locations and

followed him to an office building containing diamond and jewelry businesses located at

12900 Preston Road, Dallas, Texas, with the specific intent to rob him.

25.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2, and

Co-conspirator #15 disguised their identities prior to approaching R.S., by wearing long-

sleeved clothing, long pants, gloves, and items covering their faces, and altered the

display of the license plate on their vehicle in order to facilitate the commission of the

robbery and avoid detection and apprehension by law enforcement.

26.     On or about September 3, 2015, Co-conspirator #1, Co-conspirator #2, and

Co-conspirator #15 approached R.S. outside the above-referenced location, while **Natour**

continued surveillance.  Co-conspirator #1, Co-conspirator #2, and Co-conspirator #15,

acting together, flattened the tire and broke the window of R.S.'s vehicle and took

personal property, consisting of diamonds and a Rolex watch, from the person and in the

presence of R.S., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

27. Following the September 3, 2015 robbery, in Dallas, Texas, Co-conspirator #1, **Natour**, and Co-conspirator #15 traveled to the Los Angeles, California area and sold the above-referenced stolen diamonds to a buyer.

<u>Robbery – On or about October 26, 2015 in Houston, Texas</u>

28. On or about October 25-26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, **Cavanna**, **Garcia**, and Co-conspirator #12 conducted surveillance in the Houston, Texas area, including the vicinities of an office building containing diamond and jewelry businesses located at 6222 Richmond Avenue, Houston, Texas, and several jewelry stores, including a pawn/jewelry store (Wright Pawn & Jewelry) located at 6218 Westheimer Road, Houston, Texas, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

29. On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, **Cavanna**, **Garcia**, and Co-conspirator #12 utilized three rental vehicles, one secured by Co-conspirator #1 using a fraudulent identification document, one secured by Co-conspirator #2 using a fraudulent identification document, and one secured by **Garcia**, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

30.     On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna**, observed J.D., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced diamond and jewelry stores and followed him to a pawn store (A&P Pawn) located at 7917 Westheimer Road, Houston, Texas, with the specific intent to rob him.

31.     On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 disguised their identities prior to approaching J.D., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

32.     On or about October 26, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 approached J.D. outside the above-referenced pawn store, while **Cavanna** continued surveillance.  Co-conspirator #2, **Zamora**, and Co-conspirator #6 then took personal property, consisting of diamonds, from the person and in the presence of J.D., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

33.     Following the October 26, 2015 robbery in Houston, Texas, **Cavanna** sent the stolen diamonds to **Espitia** via FedEx from Houston, Texas to Miami, Florida.   Co-conspirator #1 and **Cavanna** subsequently sold the stolen diamonds to a buyer in Miami, Florida.

<u>Robbery – On or about November 10, 2015 in Hollywood, Florida</u>

34.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, **Espitia**, Co-conspirator #6, and **Cavanna** conducted surveillance in the Aventura, Florida area, including the vicinity of jewelry stores (International Jewelers Exchange) located at 19275 Biscayne Boulevard, Aventura, Florida, and the Boca Raton, Florida area, including the vicinity of jewelry stores (International Jewelers Exchange) located at 8221 Glades Road, Boca Raton, Florida, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

35.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, **Espitia**, Co-conspirator #6, and **Cavanna** utilized two rental vehicles, one secured by Co-conspirator #1 using a fraudulent identification document and the other secured by Co-conspirator #6, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

36.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, **Espitia**, Co-conspirator #6, and **Cavanna** observed E.I., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry stores and followed him to a business located at 4401 Sheridan Street, Hollywood, Florida, with the specific intent to rob him.

37.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 disguised their identities prior to approaching E.I., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and

altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

38.     On or about November 10, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 approached E.I. outside of the above-referenced business, while **Espitia** and **Cavanna** continued surveillance.  Co-conspirator #2, **Zamora**, and Co-conspirator #6, acting together, flattened the tire of E.I.'s vehicle and took personal property, consisting of jewelry, from the person and in the presence of E.I., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person.

39.     Following the November 10, 2015 robbery in Hollywood, Florida, Co-conspirator #1 and **Cavanna** negotiated the sale of the stolen jewelry to a buyer in Miami, Florida.  Co-conspirator #2 and **Espitia** subsequently picked up the proceeds from the buyer in Miami, Florida.

<u>Robbery – On or about November 15, 2015 in Indianapolis, Indiana</u>

40.     On or about November 13-14, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** traveled from Florida to the Indianapolis, Indiana area to target a jewelry store (Distinctive Diamonds) located in the vicinity of 8557 River Road, Indianapolis, Indiana, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

41.     On or about November 13-15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** utilized three rental vehicles, one secured by Co-conspirator #2 in Miami, Florida using a fraudulent identification document and two

secured by **Zamora** using a fraudulent identification document for each transaction, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

42.     On or about November 15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** observed L.D.B., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry store and followed him to a hotel (Marriott TownePlace Suites) located at 8468 Union Chapel Road, Indianapolis, Indiana, with the specific intent to rob him.

43.     On or about November 15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 disguised their identities prior to approaching L.D.B., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

44.     On or about November 15, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #6 approached L.D.B. outside the above-referenced hotel, while **Cavanna** continued surveillance.  Co-conspirator #2, **Zamora**, and Co-conspirator #6, acting together, flattened the tire and broke the window of L.D.B.'s vehicle and took personal property, consisting of a bag containing documents and empty jewelry trays, from the person and in the presence of L.D.B., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

45.     Following the November 15, 2015 robbery in Indianapolis, Indiana, Co-conspirator #1, Co-conspirator #2, **Zamora**, Co-conspirator #6, and **Cavanna** traveled back to Florida.

Robbery – On or about December 6, 2015 in Vienna, Virginia

46.     On or about December 3-4, 2015, Co-conspirator #1, Co-conspirator #2, and **Zamora** traveled from Florida to the Tysons, Virginia area to target a jewelry store (Mervis Diamond Importers) located in the vicinity of 1900 Mervis Way, Tysons, Virginia, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.  On or about December 5, 2015, Co-conspirator #13 traveled from Seattle, Washington to the Tysons, Virginia area, using an airline ticket purchased by Co-conspirator #1 and **Zamora**, for the same purpose.

47.     On or about December 4-6, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #13 utilized three rental vehicles, one secured by Co-conspirator #1 using a fraudulent identification document, one secured by Co-conspirator #2 using a fraudulent identification document, and one secured by **Zamora** using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

48.     On or about December 6, 2015, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #13 observed B.H., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced jewelry store and

followed him to a location near the intersection of Gallows Branch Road and Old Gallows Road in Vienna, Virginia, with the specific intent to rob him.

49.     On or about December 6, 2015, Co-conspirator #1, Co-conspirator #2, and **Zamora** disguised their identities prior to approaching B.H., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

50.     On or about December 6, 2015, Co-conspirator #1, Co-conspirator #2, and **Zamora** maneuvered their vehicle in a manner to impede B.H.'s direction of travel, while Co-conspirator #13 attempted the same.  Co-conspirator #2 and **Zamora** exited their vehicle, while Co-conspirator #1 continued surveillance, and approached B.H. and attempted to take his personal property, which they believed included diamonds and jewelry, from the person and in the presence of B.H., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun. B.H. successfully avoided the robbery by driving away in his vehicle.

51.     Following the December 6, 2015 attempted robbery in Vienna, Virginia, Co-conspirator #1, Co-conspirator #2, **Zamora**, and Co-conspirator #13 traveled to Florida.  Co-conspirator #13 subsequently traveled back to the state of Washington.

<u>Robbery – On or about January 21, 2016 in Farmers Branch, Texas</u>

52.     On or about January 19, 2016, Co-conspirator #1 and **Zamora**, using a fraudulent identification document, rented an apartment in Addison, Texas, to facilitate a

robbery that Co-conspirator #1, Co-conspirator #2, and **Zamora** committed on or about January 21, 2015.

53.     On or about January 19, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** traveled from Houston, Texas to the Dallas, Texas area to conduct surveillance, including the area of two office buildings containing diamond and jewelry businesses located at 5550 and 5580 LBJ Freeway, Dallas, Texas, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

54.     On or about January 21, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** utilized two rental vehicles, one secured by Co-conspirator #1 using a fraudulent identification document and one secured by Co-conspirator #2 using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

55.     On or about January 21, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** observed E.A., an individual who they believed to be a traveling diamond and jewelry salesman, at the above-referenced office buildings containing diamond and jewelry businesses and followed him to several locations, including a parking lot located in the vicinity of 4255 LBJ Freeway, Farmers Branch, Texas, with the specific intent to rob him.

56.     On or about January 21, 2016, Co-conspirator #1 and Co-conspirator #2 disguised their identities prior to approaching E.A., by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license

plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

57.     On or about January 21, 2016, Co-conspirator #1 and Co-conspirator #2 approached E.A. in the parking lot at the above-referenced location, while **Zamora** continued surveillance.  Co-conspirator #2 then took personal property, consisting of E.A.'s rental vehicle, which they believed contained diamonds and jewelry, from the person and in the presence of E.A., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

<u>Robbery – On or about January 27, 2016 in Dallas, Texas</u>

58.     On or about January 19, 2016, Co-conspirator #1 and **Zamora**, using a fraudulent identification document, rented an apartment in Addison, Texas, to facilitate a robbery that Co-conspirator #1, Co-conspirator #2, **Zamora**, and **Espitia** committed on or about January 27, 2015.

59.     On or about January 19, 2016, Co-conspirator #1, Co-conspirator #2, and **Zamora** traveled from Houston, Texas to the Dallas, Texas area to conduct surveillance of diamond and jewelry businesses, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

60.     On or about January 25-27, 2016, Co-conspirator #1, Co-conspirator #2, **Zamora,** and **Espitia** conducted surveillance in the Dallas, Texas area, including diamond and jewelry businesses located at 5550 and 5580 L.B.J. Freeway, Dallas, Texas,

and a jewelry store (Diamond Doctor) located at 8127 Preston Road, Dallas, Texas, for the purpose of identifying and robbing a traveling diamond and jewelry salesman.

61.    On or about January 25-27, 2016, Co-conspirator #1, Co-conspirator #2, **Zamora**, and **Espitia** utilized two rental vehicles, both secured by **Zamora** using a fraudulent identification document, in order to conduct the above-referenced surveillance, facilitate the commission of the robbery, and avoid detection and apprehension by law enforcement.

62.    On or about January 27, 2016, Co-conspirator #1, Co-conspirator #2, **Zamora**, and **Espitia** observed an FBI undercover employee, who had secretly assumed the role of a traveling diamond and jewelry salesman, inside the above-referenced jewelry store located at 8127 Preston Road, Dallas, Texas, and followed him/her to a hotel parking lot in the vicinity of 14021 Noel Road, Dallas, Texas, believing the FBI undercover employee was a traveling diamond and jewelry salesman.

63.    On or about January 27, 2016, Co-conspirator #1 and Co-conspirator #2 disguised their identities prior to approaching the FBI undercover employee, by wearing long-sleeved clothing, long pants, gloves, and items covering their faces, and altered the display of the license plate on their vehicle in order to facilitate the commission of the robbery and avoid detection and apprehension by law enforcement.

64.    On or about January 27, 2016, Co-conspirator #1 and Co-conspirator #2 approached the FBI undercover employee in the parking lot at the above-referenced location, while **Zamora** and **Espitia** continued surveillance.  Co-conspirator #1 and Co-conspirator #2, acting together, broke the window of the FBI undercover employee's

vehicle and took personal property, consisting of two bags, which they believed contained diamonds and jewelry, from the person and in the presence of the FBI undercover employee, in his assumed role as a traveling diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

In violation of 18 U.S.C. § 1951(a).

<u>Count Three</u>
Interference with Commerce by Robbery
(Violation of 18 U.S.C. §§ 1951(a) and 2)

On or about January 30, 2015, in the Northern District of Texas, **Mohammed Natour** and **Andres Felipe Henao**, the defendants, and others known to the Grand Jury, aiding and abetting one another, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in 18 U.S.C. § 1951, in that **Mohammed Natour** and **Andres Felipe Henao**, the defendants, and others known to the Grand Jury, aiding and abetting one another, did unlawfully take and obtain personal property, consisting of diamonds, from the person and in the presence of H.B., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a knife.

In violation of 18 U.S.C. §§ 1951(a) and 2.

<u>Count Four</u>
Interference with Commerce by Robbery
(Violation of 18 U.S.C. §§ 1951(a) and 2)

On or about September 3, 2015, in the Northern District of Texas, **Mohammed Natour**, the defendant, and others known to the Grand Jury, aiding and abetting one another, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in 18 U.S.C. § 1951, in that **Mohammed Natour**, the defendant, and others known to the Grand Jury, aiding and abetting one another, did unlawfully take and obtain personal property, consisting of diamonds and a Rolex watch, from the person and in the presence of R.S., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

In violation of 18 U.S.C. §§ 1951(a) and 2.

<u>Count Five</u>
Interference with Commerce by Robbery
(Violation of 18 U.S.C. §§ 1951(a) and 2)

On or about January 21, 2016, in the Northern District of Texas, **Roger Zamora [a.k.a. Jaime Alba Juarez]**, the defendant, and others known to the Grand Jury, aiding and abetting one another, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in 18 U.S.C. § 1951, in that **Roger Zamora [a.k.a. Jaime Alba Juarez]**, the defendant, and others known to the Grand Jury, aiding and abetting one another, did unlawfully take and obtain personal property, consisting of a rental vehicle which they believed contained diamonds and jewelry, from the person and in the presence of E.A., in his capacity as a diamond and jewelry salesman, and against his will by means of actual and threatened force, violence, and fear of immediate injury to his person, that is, by using and brandishing a BB gun.

In violation of 18 U.S.C. §§ 1951(a) and 2.

## Count Six
### Interference with Commerce by Robbery
(Violation of 18 U.S.C. §§ 1951(a) and 2)

On or about January 27, 2016, in the Northern District of Texas, **Roger Zamora [a.k.a. Jaime Alba Juarez]** and **Camila Andrea Espitia**, the defendants, and others known to the Grand Jury, aiding and abetting one another, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in 18 U.S.C. § 1951, in that **Roger Zamora [a.k.a. Jaime Alba Juarez]** and **Camila Andrea Espitia**, the defendants, and others known to the Grand Jury, aiding and abetting one another, did unlawfully take and obtain personal property, consisting of two bags which they believed contained diamonds and jewelry, from the person and in the presence of an FBI undercover employee, who had assumed the role of a traveling diamond and jewelry salesman, and against his/her will by means of actual and threatened force, violence, and fear of immediate injury to his/her person, that is, by using and brandishing a BB gun.

In violation of 18 U.S.C. §§ 1951(a) and 2.

<u>Forfeiture Notice</u>
[18 U.S.C. § 1963; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);
18 U.S.C. § 3665]

1.    The allegations stated previously in this indictment are incorporated by reference in this notice, as if stated here.

2.    Upon conviction on Count One, **Roger Zamora [a.k.a. Jaime Alba Juarez], Mohammed Natour**, and **Fabrizia Cavanna Sarmiento [a.k.a. Fabrizia Cavanna]**, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 1963(a)(1)-(3):

   a.    any and all interest defendants have acquired or maintained in violation of 18 U.S.C. § 1962;

   b.    any and all interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise named and described herein which defendants established, operated, controlled, conducted or participated in the conduct of, in violation of 18 U.S.C. § 1962; and

   c.    any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962.

This property includes, but is not limited to, a forfeiture money judgment against the convicted defendant(s) in an amount as is proved at trial in this matter representing the total amount of proceeds obtained as a result of the violation, for which the convicted defendant(s) shall be jointly and severally liable.

3.    Upon conviction on any of Counts Two through Six, **Roger Zamora [a.k.a. Jaime Alba Juarez], Camila Andrea Espitia, Mohammed Natour, Fabrizia Cavanna Sarmiento [a.k.a. Fabrizia Cavanna], Andres Felipe Henao, Brayan David**

Vargas Londoño [a.k.a. Brayan Vargas, a.k.a. Brayan David Vargas Gonzalez],

Rodolfo Vargas Londoño [a.k.a. Christian Vargas, a.k.a. Mario Steven Cuellar,

a.k.a. Joshua Steven Cavarez, a.k.a. Blanco Elizanoro Recio-Achach], and **Luis**

**Garcia**, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes

or is derived from proceeds traceable to the respective violation.  This property includes,

but is not limited to, a forfeiture money judgment against the convicted defendant(s) in an

amount as is proved at trial in this matter representing the total amount of proceeds

obtained as a result of the violation, for which defendants shall be jointly and severally

liable.

    4.    Upon conviction on any of Counts Two through Six, **Roger Zamora**

**[a.k.a. Jaime Alba Juarez]**, **Camila Andrea Espitia**, **Mohammed Natour**, **Fabrizia**

**Cavanna Sarmiento [a.k.a. Fabrizia Cavanna]**, **Andres Felipe Henao**, **Brayan David**

**Vargas Londoño [a.k.a. Brayan Vargas, a.k.a. Brayan David Vargas Gonzalez]**,

**Rodolfo Vargas Londoño [a.k.a. Christian Vargas, a.k.a. Mario Steven Cuellar**,

**a.k.a. Joshua Steven Cavarez, a.k.a. Blanco Elizanoro Recio-Achach]**, and **Luis**

**Garcia**, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 3665,

any firearms and ammunition found in the possession or under the immediate control of

the respective defendant at the time of his or her arrest.

    5.    <u>Substitute Assets</u>:  Pursuant to 18 U.S.C. § 1963(m), 28 U.S.C. § 2461(c),

and 21 U.S.C. § 853(p), each convicted defendant shall forfeit to the United States any of

their other property, real or personal, up to the value of property described above, if, by

any act or omission of the respective defendant, the property subject to forfeiture from that defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred, sold to or deposited with a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty.

A TRUE BILL:

_____
FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY


_____
KEITH ROBINSON
Assistant United States Attorney
Texas State Bar No. 00788298
1100 Commerce, Third Floor
Dallas, TX 75242
Telephone: 214-659-8600
E-mail: keith.robinson2@usdoj.gov


_____
JOSEPH WHEATLEY
Trial Attorney
Pennsylvania State Bar No. 200210
Organized Crime and Gang Section
U.S. Department of Justice
Washington, DC 20530
Telephone: 202-514-3517
E-mail: joe.wheatley@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

ROGER ZAMORA (03)
a.k.a. JAIME ALBA JUAREZ
CAMILA ANDREA ESPITIA (04)
MOHAMMED NATOUR (05)
FABRIZIA CAVANNA SARMIENTO (07)
a.k.a. FABRIZIA CAVANNA
ANDRES FELIPE HENAO (08)
BRAYAN DAVID VARGAS LONDOÑO (09)
a.k.a. BRAYAN VARGAS
a.k.a. BRAYAN DAVID VARGAS
GONZALEZ
RODOLFO VARGAS LONDOÑO (10)
a.k.a. CHRISTIAN VARGAS
a.k.a. MARIO STEVEN CUELLAR
a.k.a. JOSHUA STEVEN CAVAREZ
a.k.a. BLANCO ELIZANORO RECIO-
ACHACH
LUIS GARCIA (11)

SEALED SECOND SUPERSEDING INDICTMENT

18 USC § 1962(d)
Racketeer Influenced Corrupt Organizations (RICO) Conspiracy

18 USC § 1951(a)
Conspiracy to Interfere with Commerce by Robbery

18 USC §§ 1951(a) and 2
Interference with Commerce by Robbery

18 USC § 1963; 18 USC § 981(a)(1)(C) and 28 USC § 2461(c); 18 USC § 3665
Forfeiture Notice
6 Counts

A true bill rendered

-------------------------------------------------------------------------

DALLAS                                                        FOREPERSON

Filed in open court this 21st day of November, 2017.

-------------------------------------------------------------------------

                                                                    Clerk

**Warrant to be Issued**
Fabrizia Cavanna Sarmiento (07)
Brayan David Vargas Londono (09)
Rodolfo Vargas Londono (10)
**Defendant has been in custody since:**
Roger Zamora(03) 1/29/2016
Camila Andrea Espitia (04) 1/29/2016
Mohammed Natour (05) 1/27/2017
Andres Felipe Henao (08) 1/27/207
Luis Garcia (11) 7/10/2017


-------------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
Criminal Case Pending:  3:16-CR-056-L